UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
03 APR 18 PM 5:12
U.S. ...
N.D. OF ALABAMA

TIM and LYNN STIDHAM, )
)
Plaintiffs, )
)
vs. ) Civil Action No. CV-03-S-0402-NE
)
TYSON FOODS, INC., et al., )
)
Defendants. )

ENTERED
APR 18 2003

# MEMORANDUM OPINION

Plaintiffs, Tim and Lynn Stidham, commenced this action in the Circuit Court of Cullman County, Alabama, against the following defendants: Tyson Foods, Inc., an Arkansas corporation; Tyson Farms, Inc., a North Carolina corporation (both of these corporate entities will be collectively referred to herein as "Tyson"); David Pruett, an Alabama resident; Wally Taylor, an Alabama resident (both Pruett and Taylor are Tyson employees); and other fictitious defendants.

Defendants subsequently removed the action to this court based on the complete diversity of citizenship of the parties and the requisite amount in controversy. *See* 28 U.S.C. § 1332. Defendants claim that removal is proper, despite the fact that Taylor and Pruett are Alabama residents, because they were fraudulently joined by plaintiffs for the purpose of destroying the complete diversity of citizenship between the proper parties to this action. Plaintiffs dispute that characterization, and filed a motion to remand this action to the state court (doc. no. 5). The court now undertakes to consider the merits of that motion, as well as defendants' written objections thereto (doc. no. 7).

## I. REMAND STANDARD AND FRAUDULENT JOINDER

Jurisdiction under 28 U.S.C. § 1332 requires "complete diversity" — the citizenship of every

plaintiff must be diverse from the citizenship of every defendant. *See, e.g., Palmer v. Hospital Authority of Randolph County*, 22 F.3d 1559, 1564 (11th Cir.1994) (citing *Strawbridge v. Curtiss*, 3 Cranch (7 U.S.) 267, 2 L. Ed. 435 (1806)). An action may nevertheless be removable if the joinder of non-diverse parties is deemed to have been "fraudulent": that is, for the purpose of defeating federal jurisdiction. *See, e.g., Wilson v. Republic Iron and Steel Co.*, 257 U.S. 92, 97, 42 S. Ct. 35, 66 L. Ed. 144 (1921) (holding that a diverse defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy"); *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983).

The filing of a frivolous or other illegitimate claim against a non-diverse defendant is fraudulent joinder, and a district court may disregard the citizenship of such defendants when assessing the existence of "complete diversity," or not. *Tedder v. F.M.C. Corp.*, 590 F.2d 115, 117 (5th Cir. 1979). The doctrine of fraudulent joinder thus is an exception to the requirement that parties be completely diverse, and provides that an action may be removed from state court, despite a lack of complete diversity of citizenship among the parties, if the plaintiff's joinder of a non-diverse party was fraudulent. *See, e.g., Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Joinder of a party under Federal Rule of Civil Procedure 20(a)[1] will be deemed fraudulent if it is done solely to defeat diversity jurisdiction.

Traditionally, courts have deemed a joinder to be "fraudulent" in two situations: "The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-

---

[1] Federal Rule of Civil Procedure 20(a) provides:

All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

diverse) defendant. ... The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts." *Triggs*, 154 F.3d at 1287; *see also, e.g., Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998) ("In a removal case alleging fraudulent joinder, the removing party has the burden of proving either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court.") (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)); *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983).

> For removal under 28 U.S.C. § 1441 to be proper, no defendant can be a citizen of the state in which the action was brought. 28 U.S.C. § 1441(b). Even if a named defendant is such a citizen, however, it is appropriate for a federal court to dismiss such a defendant and retain diversity jurisdiction if the complaint shows there is no possibility that the plaintiff can establish any cause of action against that defendant. *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir.1998). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superceded by statute on other grounds as stated in Wilson v. General Motors Corp.*, 888 F.2d 779 (11th Cir. 1989). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs*, 154 F.3d at 1287 (emphasis in original).

*Tillman v. R.J. Reynolds Tobacco*, 253 F.3d 1302, 1305 (11th Cir. 2001) (per curiam) (emphasis in original) (affirming district court's dismissal of five individual defendants who had been employed by R.J. Reynolds in the promotion, advertising, and sale of cigarettes within Alabama as being fraudulently joined for purpose of defeating diversity jurisdiction).

The Eleventh Circuit also has identified a third type of fraudulent joinder: when "a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim

against the nondiverse defendant." *Triggs*, 154 F.3d at 1287 (citing *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *overruled on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000)).

> Joinder of defendants under Rule 20 requires: (1) a claim for relief asserting joint, several, or alternative liability and arising from the same transaction, occurrence, or series of transactions or occurrences, and (2) a common question of law or fact. Fed. R. Civ. P. 20(a). The district court correctly found no allegation of joint liability or any allegation of conspiracy. Further, the alleged transactions involved in the "automobile" class are wholly distinct from the alleged transactions involved in the "merchant" class. The only similarity between the allegations in the "automobile" class and the "merchant" class are allegations of violations of Alabama Code §§ 5-19-1, 5-19-19, and 5-19-20. Such commonality on its face is insufficient for joinder.
>
> Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action. A defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S. Ct. 35, 37, 66 L. Ed. 144 (1921). Although certain putative class representatives may have colorable claims against resident defendants in the putative "automobile" class, these resident defendants have no real connection with the controversy involving Appellants Davis and West and Appellee Lowe's in the putative "merchant" class action. We hold that the district court did not err in finding an attempt to defeat diversity jurisdiction by fraudulent joinder. We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder.

*Tapscott*, 77 F.3d at 1360 (footnote omitted).

The burden of proving fraudulent joinder rests with the removing defendant. *See Coker*, 709 F.2d at 1440. The claim must be supported by clear and convincing evidence. *Parks v. New York Times*, 308 F.2d 474, 478 (5th Cir. 1962). When determining whether a defendant has been fraudulently joined, the court must examine the plaintiff's pleadings on the date notice of removal

was filed,[2] although it also may consider affidavits and deposition testimony submitted by the parties. *See, e.g., Pacheco De Perez*, 139 F.3d at 1380. As with a Rule 56 motion for summary judgment, courts must evaluate that evidence in the light most favorable to the plaintiff — the party opposing removal — resolving any uncertainties about the applicable laws in the plaintiff's favor. *See id.* It follows from the foregoing propositions that a defendant's burden when seeking to establish fraudulent joinder is a heavy one: "where a plaintiff states *even a colorable claim* against the resident defendant, joinder is proper and the case should be remanded to state court." *Id.* (emphasis supplied) (citing *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989)); *see also Coker*, 709 F.2d at 1440-41 ("If there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court *must find* that joinder was proper and remand to that state court.") (emphasis added).

In short, a plaintiff need not "have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs*, 154 F.3d at 1287.

## II. SUMMARY OF FACTS

Paragraphs numbered 4 through 14 of the complaint filed in state court reveal the following facts. At the time of the events giving rise to this action, plaintiffs owned a chicken farm in northern Alabama. In 1989, plaintiffs entered into a contractual relationship with defendant Tyson, whereby Tyson provided young chickens to plaintiffs, who raised the birds to maturity, and then transferred them back to Tyson for processing. The business relationship between Tyson and independent

---

[2] As in all other issues concerning removal, "[j]urisdictional facts are assessed on the basis of plaintiff's complaint *as of the time of removal.*" *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1097 n.13 (11th Cir. 1994) (emphasis in original) (citations omitted); *see also, e.g., Coker*, 709 F.2d at 1440 ("Removability should be determined 'according to the plaintiff's pleading at the time of the petition for removal.'") (citations omitted); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir.1989) (same).

producers such as plaintiffs was governed by a "Broiler Growing Guide," which is a document that "set out in part certain rights and remedies available to the producers concerning problems and deficiencies noted by Tyson."[3] Pursuant to the terms of the agreements entered into between plaintiffs and Tyson, plaintiffs' chicken farming operation was supervised by defendant David Pruett, who was employed by Tyson as a production manager over chicken farms located in plaintiff's geographic vicinity. Pruett, in turn, was supervised by defendant Wally Taylor, who was employed by Tyson to supervise Pruett and several other production managers.

Plaintiffs enjoyed a "good business relationship" with Tyson until February of 2001, when plaintiffs' farm was struck by lightning, "causing a large amount of chickens to be lost."[4] Plaintiffs claim that, subsequent to that loss, defendants disregarded the provisions set forth in the Broiler Growing Guide and "collectively, and in concert with each other, restricted the subsequent shipment of chickens to the Plaintiffs and therefore deprived the Plaintiffs of receiving [their] full capacity of shipments of chickens."[5] Plaintiffs claim that defendants imposed additional, arbitrary harships, such as "requiring the Plaintiffs to spend thousands of dollars in unnecessary upgrades and improvements."[6]

Citing the breakdown of their business relationship with defendants, plaintiffs attempted to sell their farm to third parties. Plaintiffs assert, however, that defendants intentionally and wantonly interfered with those efforts by unreasonably withholding approval of the sales, and warning third parties that plaintiffs' business had failed, thus driving down the market price. Plaintiffs ultimately

---

[3] Notice of Removal, Tab A (state-court Complaint) ¶ 8.
[4] *Id.* ¶¶ 9, 12.
[5] *Id.* ¶ 12.
[6] *Id.*

sold their farm at a "substantial loss."[7] At some point thereafter, plaintiffs commenced this action. Their complaint asserts several state-law claims against all defendants: (i) breach of contract; (ii) fraud and misrepresentation; (iii) breach of implied duty of good faith; (iv) intentional interference with a business relationship; (v) negligent supervision; and (vi) negligence and wantonness.

### III. DISCUSSION

Defendants assert that the joinder of Pruett and Taylor is fraudulent because there is no possibility that plaintiffs can establish any cause of action against either of them. *See Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (citation omitted). Thus, the court must determine whether plaintiffs have asserted a colorable claim against either Pruett or Taylor. If so, then the case must be remanded to state court. *See, e.g., Pacheco De Perez*, 139 F.3d at 1380.

The "intentional interference with a business relationship" count of plaintiffs' complaint alleges, in pertinent part, that:

> 28. That beginning on or about May of 2001, the Plaintiffs were faced with foreclosure of their property and their parents' property due to the oppression and wanton acts of the Defendants, the breach of the agreement by the Defendants, and other acts alleged herein. As a result the Plaintiffs were forced to sell their farming operation.
>
> 29. That the Defendants, individually and in concert with one another, engaged in a pattern and practice of intentional, malicious and willful interference with the Plaintiffs' contractual relationships with third parties. When the Plaintiffs successfully negotiated sales prices with third parties of the farming operation, some of which resulted in written contracts between the parties, the Defendants unreasonably withheld approval of the sale of the farming operation and/or affirmatively misrepresented to third parties that they would have to spend hundreds of thousands of dollars to upgrade the facility or they would not do business with the third parties, and made representations and misstatements in order to further economically oppress the Plaintiff[s] and to deprive the Plaintiffs from a profitable sale of their business.

---

[7] *Id.* ¶ 14.

30.  As a result of the Defendants' tortious interference, the Plaintiffs suffered numerous losses of real estate agreements and offers to purchase the farm and threatened with foreclosure, ultimately sold the family farm and 100 acres at a substantial loss, and the Plaintiffs are still indebted by virtue of mortgages and other liens on other property and family property which they operate.[8]

Defendants argue that the claim cannot be maintained against Pruett and Taylor because "plaintiffs only loosely conclude, and without factual basis, that [Pruett and Taylor] engaged in conduct outside the line and scope of their employment" and, thus, plaintiffs "have failed to establish a prima facie case."[9] This court disagrees with defendants' overall assessment, and finds that the pleadings provide an adequate basis for at least a colorable claim of intentional interference with business relations against Pruett and Taylor. *See generally* Fed. R. Civ. P. 8(a)(2) (setting forth liberal notice pleading standards which require only "a short and plain statement of the claim showing that the pleader is entitled to relief"); Ala. R. Civ. P. 8(a)(1) (same); *see also Perlman v. Shurett*, 567 So. 2d 1296, 1297 (Ala. 1990) (observing that the tort of intentional interference with business relations can be maintained against an individual employee of a corporation, provided there is a showing that such individual was acting with actual malice).

Given that the court has determined that plaintiffs have asserted at least one colorable claim against Pruett and Taylor, it is not necessary to analyze the sufficiency of their remaining claims as applied to those defendants.

### III. CONCLUSION

Defendants have not met their heavy burden of demonstrating that Pruett and Taylor were fraudulently joined. Accordingly, plaintiffs' motion to remand is due be granted. An appropriate

---

[8] *Id.* ¶¶ 27-30.
[9] Defendants' opposition to remand (doc. no. 7), at 10.

order will be entered contemporaneously herewith.

DONE this __18th__ day of April, 2003.

_____
United States District Judge